This case is 410-0352, People v. Cottle. Appearance of the appellant, Jude M. Redwood. Yes, sir. You are she? Yes, sir. And for the appellee, people, Linda Susan McLean.  Thank you, Your Honor. May it please the court and counsel. Counsel. And by the way, excuse me, counsel, I want to thank you and Ms. McLean for being here early as we request. So we could get started early. Sometimes we're able to do that. You may continue. Thank you. The stop in this case was not supported by specific and articulable facts, giving rise to a reasonable suspicion that the defendant was involved in criminal activity. The anonymous call was not a 9-1-1 call, not by any evidence that's in this record. Although the state repeatedly refers to the call as a 9-1-1 call or an emergency call, the facts in the record show that Deputy Todd did not know whether it was a 9-1-1 call. Deputy Todd received the telephone call from Officer Smith of the Paris Police Department, who did not indicate whether it was or was not a 9-1-1 call. One of the factors in some of the cases that you and Ms. McLean discuss is, for lack of a better way of putting it, the traceability of the caller. 9-1-1 calls in many jurisdictions are recorded regularly and can be traced back to the person making the call. And that was the state's argument, that there somehow is more indicia of reliability because it was a 9-1-1 call. First of all, we don't know that it was a 9-1-1 call. It could have been a call directly to the Paris Police non-emergency line for all we know. The other argument that I made is that in this day and age of throwaway phones, there's the AT&T Go phone, there's a track phone, you can buy a telephone for cash, you can buy a minutes card, both of those at Walmart, you call someplace in India, you give them any name and address, you're not billed for that, there's no credit check, you've paid cash for that phone. It's a throwaway phone, it's a non-traceable phone. So any cases that say that the 9-1-1 call now has this indicia of reliability because it's traceable, are no longer valid. Your opponent seems to think, if I understood it correctly, that Rollins was helpful to their position? I would agree more with the dissent in Rollins. I believe that Rollins was a very close case. In that case, the tipster described the car in the way we described it, described the men inside the car, indicated that the men were from Chicago, which indicates some kind of inside information in the case. And in that case, the tipster reported that they actually saw the crime in progress, selling drugs out of the trunk of the car. That was at Green Meadows in Danville, which is a housing project. So while there was an anonymous 9-1-1 tip, but under Alabama v. White, where the tip is anonymous, if the details of the crime or the details of the particular participants and especially some kind of predictive information showing that the person has inside information, you can rely less or count less on the anonymity of the call because you have these specific details. And that, I believe, was what the case in Rollins was more about. Less about the 9-1-1 call and more about the predictive information of criminal behavior. In our case here, the caller was not named or identified. Deputy Todd said he never spoke to the caller. He mentioned in his testimony that somebody in a truck drove by and yelled out the window, hey, that's what you get. And I would submit to the court, I do a lot of work in Paris, that's not unusual in Paris to get people yelling out the window, particularly if somebody's being stopped. Even away from the Longhorn Bar? There's a lot of bars in that town. But the person who went by in the truck, what's important here, that person didn't stop. The person didn't identify themselves. The person didn't later come and say, here's what I saw, here's who I am, and here's how I know that that motorcycle was violating the law. The person just drove on. That person could have been a personal enemy of Mr. Cottle. That person could have been somebody who was passed by the motorcycle and was engaging in road rage when he called the police. We don't know about the person. And Deputy Todd, the important thing here is Deputy Todd had to know before he made the stop more about that person and why that person called and whether there was criminality there. Officer Smith. Officer Smith was simply a declarant. He didn't give Deputy Todd any reason to judge the credibility of the informant. Now the state has brought up a case, the veterinary clinic case. Ewing. Ewing, right, the veterinary clinic case Ewing, where the officers did use their own particular police training and knowledge and ability to analyze the call made by the worker at the veterinary clinic and decide that these allegations, how the clerk at the clinic described these two men who dropped off the dog, how they were waving the car they got into, which way they were going, and of course where they were coming from because they had dropped the dog off and left some kind of information. A dog or another animal, I don't know, left some kind of information. So that officer used his police ability to make a determination. I think these are drunk drivers on the road. In this case, though, there's no evidence that Officer Smith made any kind of police determinations about either the credibility of the informant or about the single fact that was complained about, going at a high rate of speed. In Alabama v. White, the tip was anonymous. And the court characterized that as a close case. But the thing that tipped the scales in White was the predictive information of the criminal behavior of Ms. White that later turned out to be true after the police observed what Ms. White was doing. Where she was going to the Dobie Motel and what she was carrying, a brown attache case. The court didn't rely so much on the fact that the car was there and it had a broken window, but the fact that at a given time she would come out of a certain address, get into that car, go to the Dobie's Motel. That was predictive information showing in sight information. The information that was given by the tipster described only facts at the time of the call. There was no predictive information at all. There were no facts describing criminal behavior. And the meager description of the person and the vehicle don't rise to the kind of detail that is found in the other cases where there was some more information that would show inside knowledge or inside information of criminality. I found three cases that talk about a vehicle going at high rate of speed. Only three, that tells me a lot. In Fox, the officer testified that the defendant was going at a greater than reasonable speed when he left the parking lot area, stopped the car for that reason, and found evidence of crime. But the court said that wasn't good enough for a reasonable suspicion to stop the car. Going at a greater rate of speed than is reasonable doesn't commit a crime. In Cure Volitis, the officer testified that the car was going at a high rate of speed. I'm not sure I understood. Going back to that first case, was the officer there to see this car traveling at a greater rate? Yes. The officer had seen a car pull into the boat dock area where people were known to party and litter and observed the car in there. The car, after the police car drove in, started leaving, and the officer testified it went at a greater rate of speed than was reasonable under the circumstances. Why wasn't that good enough? The defendant testified that he didn't break any speed limit, he didn't break any traffic laws, and the court said that it wasn't good enough because the officer didn't testify that the car was speeding. And it didn't raise to reasonable suspicion to stop him for a crime. What court was this? Second District. It's in my brief. I don't have the district here. I think it was the Second District. I'm pretty sure it was. The trial court denied the motion to suppress, and the appellate court reversed it on that basis? Well, Your Honor, I'm not sure what the trial court did. I'm just going by what the appellate court did for this argument. But it is in my brief there. Okay. In Curablitis, the officer's testimony was that the defendant was driving at a high rate of speed. And that case is cited in my reply brief. And in that case, the court said a high rate of speed could very well mean 45 miles per hour, which was the posted speed limit. Where is that in your brief? That would be in the reply brief. People v. Curablitis. Some reason it wasn't in your main brief? The one in the main brief is People v. Fox. Well, this citation reminds me, though, Counsel, that one of the really pleasant things about this job is that we're not bound to follow nonsense decisions of our sister districts, like saying that when a cop says a car's leaving at a high rate of speed, maybe it wasn't speeding. That's true, Your Honor. And the interesting distinction in this case is that we didn't have a cop saying that Mr. Cottle was traveling at a high rate of speed. What we had in this case was an unknown, anonymous citizen reporting on a telephone. Is my understanding correct that in this case, the police officer testified he never saw the car violate any traffic laws? In this case, the police officer never saw the motorcycle violate any traffic laws. He followed the motorcycle for, at preliminary hearing, he said he followed the motorcycle for one law. Fortunately, your case is considerably stronger than that Second District case, though. It is. Two days ago, on the ISBA Eclipse, a case came down from the Second District, which is called the City of Rockford v. Matthew Custer. Did you file a motion to strike part of the state's brief? I believe I filed a motion to strike the parts of the state's brief that said that the anonymous tipster reported that And it's all right for you to do that, but it's also all right for you to now cite cases that the state does not know any about? I don't have to argue the case that just came down the other day. Well, you argued cavilitis, which you had the opportunity to have when you filed your opening brief. That is true, Your Honor, and I hadn't found it yet. Please proceed. Thank you. Speeding is a petty offense, unless the speed is 40 miles per hour or more over the limit. So what we have in the state's cases is we have a lot of cases that report criminality of drug offenses, violent offenses, but we don't have any cases that report speeding offenses. There are simply very few of them in the reporters at all. We have cases that report drunk driving. That's a whole different situation here because, first of all, the people's cases that there's an anonymous tip of drunk driving are distinguished because none of those involve an anonymous tipster. In Schaefer, there was a Wendy's employee who identified himself on calling from Wendy's. In Jacksonville, there's one Wendy's. So that tipster was identified. The court said that the tipster was close enough at the drive-up window to the driver to know, just by general knowledge, if a person appeared to be intoxicated or not. And even though that person reported something more like disorderly conduct, they also stated that he appeared to be drunk. In People v. DePace, two women saw what they felt was reckless driving, serious weaving. They followed the car to a parking lot with a store. They waited there for the police while the defendant went into the store. The two tipsters identified themselves and, indeed, one testified at trial. Meanwhile, Mr. DePace went into the store, came out, and drove off. And it's important to note that he drove off first, before he was stopped by the police officer, and the police followed him, noticed a traffic violation, and stopped DePace on the basis of the traffic violation. Did Deputy Todd, in this case, explain why he pulled the motorcycle over? Yes, he pulled the motorcycle over solely on the basis of the tip that he received from Officer Smith of the Paris Police Department. But here's my problem. Perhaps Mrs. McClain can help me with it. Excuse me. If a police officer gets a report that someone was speeding, or that someone was driving drunk, or there was a gun in the car, or all kinds of things, you have reason to think that if you pull them over, there might be some evidence of that crime that someone reported was occurring. Namely, there was a gun in the car. This person was, is a chiefer. He appeared drunk or intoxicated or impaired in some fashion. But what I don't understand is, if a car is reported speeding, or a vehicle is reported speeding, at point X, and you're now a police officer at point Y, and a vehicle is not speeding in your mission, what's the point of pulling them over? To discover what? He never explained this? He didn't explain what the point is to pull them over, and indeed, as I argued at the trial report, what Deputy Todd really should have done is continue to follow the defendant on a motorcycle until he, number one, observed some kind of a traffic offender gave him a reasonable suspicion to pull the motorcycle driver over. Or two, simply follow him until the motorcycle driver arrived at his destination, got off his motorcycle, and then the police officer could walk up to him as any citizen could walk up to any other citizen. At that point, he would have presumably smelled the alcohol on his breath and have been able to arrest him for the DUI. My argument is that the police officer jumped the gun on this one. I've heard several defense attorneys complain, make a complaint, I've never bought. This instance would be one example of it, where a normal citizen can drive a mile without violating some obscure traffic law or something, crossing the center line, or whatever. And a police officer, if he's being ultra-diligent, can always find some colorable basis to pull him over. That means there is, in fact, some violation. Apparently, here there was nothing. Is that correct? That is correct. Officer Todd observed no violation of either traffic laws or criminal laws, and he admitted that in his testimony. I'm not sure, what was the judge's assessment on why he thought this was appropriate conduct by the officer? I quarrel with Judge Lewis's determination, because he said in this case... Judge Lewis was the trial judge? Yes. Judge Lewis wasn't at the bench trial, but he was the judge who heard the suppression. I see. And he said that he felt that the officer on these facts had a reasonable suspicion to think that a citizen would go to the trouble to call the police and report a high rate of speed, that it meant it was speeding. So there's a leap there, that high rate of speed means speeding. But a high rate of speed doesn't necessarily mean speeding. I came here this morning at a high rate of speed. It took me more than two hours to get here from St. Joseph, which is about two hours away, because I don't drive that fast, and there was construction. But I did get here at a high rate of speed. If I left at the same time, I wouldn't be here if I was on my bicycle, which does not go at a high rate of speed. My quarrel with the judge is that the words high rate of speed does not indicate speeding. And the only evidence was from Mr. Cottle that he did not violate the speed limit on that day. Therefore, at the time that the stop was initiated, Deputy Todd did not have specific and articulable facts that could raise a reasonable suspicion that Mr. Cottle was violating a law. Speeding also isn't a criminal law, so we're not talking about cases like a gun, a beating, a murder. We're talking about cases like Florida v. J.L., which has a range of descriptive details, but it doesn't include the specifics indicating criminality, and it's anonymous. So without the identification of the tipster or the predictive information showing the inside information or basis of the tip of criminality, this is not even a close case like Alabama v. White. And in J.L., the Supreme Court warned us that making an exception for certain crimes, and in that case firearms, would enable any person seeking to harass another person to call in a report and subject their victim to an intrusive and embarrassing search by police just by calling in a false report. And that was an argument that I made in the trial court, that any person... Your time's up, Counsel. You have an opportunity to address this again in rebuttal. Thank you. Okay, thank you. Ms. McClain? May it please the Court? Counsel? The issue in this case is whether the phone calls and the deputy's corroboration were sufficient to provide the police with the required articulable suspicion to perform the stop at the motorcycle. The state's maintaining that the tip plus corroboration was sufficient. What corroboration was there? The officer observed the yellow crotch rocket motorcycle, which was a very unusual type of motorcycle, the gender of the person, the direction the man was traveling. He was on Highway Route 133. Well, that's corroboration that Mr. Kyle was driving a yellow motorcycle heading east into Paris. Is there any corroboration that he was speeding? Several cases indicate you don't need to corroborate the specific criminal activity. You just need to corroborate some predictive information so that you can test the reliability of the tip. Well, let's assume that Mr. Kyle had not had any alcoholic beverage at all and this stop was made. Would the officer have been positioned to write a ticket for speeding? I think he would have had reasonable suspicion, which is the lesser standard. No, that wasn't my question. Could the officer have written him a ticket for speeding? I'm not sure if he would have had probable cause. Reasonable suspicion is a much lesser standard. I think there was definitely enough here to stop him. As I asked Ms. Redwood, let me ask you, did the officer indicate what the purpose of the stop was? I don't believe he did testify. Well, you tell me. He was told this motorcycle was speeding. He followed the motorcycle and it didn't speed, but he stopped it anyway. What was he seeking to do with this stop? I think that there's cases where there's reckless, erratic driving that could indicate a person's intoxicated. Well, if there were reckless or erratic driving, the anonymous caller didn't say any of that. I think speeding can be interpreted to be reckless or erratic. So, an anonymous caller saying there's speeding, a certain vehicle is speeding, and you can identify this vehicle as that's the one, provides sufficient articulable suspicion to believe that the vehicle driver is drunk or driving recklessly? That's it? What case stands for that proposition, counsel? I think that there is enough for a stop, not enough for probable cause, but there's enough for a stop based on the tip. To do what? What was his purpose in stopping? I thought Justice Appleton's question was a good one. Clearly, it would be kind of a joke for the deputy to write a ticket for speeding that he never saw. I've been in this business 40 years. I don't think I've ever heard of that, much less actually seen it, where a cop writes a ticket for speeding that he didn't see, or no other police officer saw, maybe in a radar thing, because someone told him earlier in the day this vehicle was speeding. That can't be it, can it? I think that the speeding was indicative of reckless or erratic. That's not my question. He couldn't have written him a ticket for speeding. He could stop him to see what's going on. That's not my question. Could he have written him a ticket for speeding based upon the anonymous call? No, I don't. Okay. So when he stopped him, what was the purpose of the stop? To see what's going on. Just to see what's going on? Brief investigatory stop to see if there's any criminal activity. Regarding the call from Officer Smith from the Paris Police Department to Todd, I guess that was the sole source of the information. Is Ms. Redwood correct that we know nothing more about that? There's no additional evidence about it as to the source of the call? It was just some person called in? I think an anonymous citizen. Schaefer and Ewing, of course, are rather different. Those were calls that were traceable. We have nothing in the record to show that these were traceable. This call was traceable. Do we? I think it can be inferred. Based on what? That it was an emergency situation since the person spotted speeding. So he calls and reports what's happening right now. I don't see that as an inference. I don't know how the Paris PD works and what calls there are or how familiar people are. In my home community in Champaign, I think there are multiple calls. You can reach the Champaign Police Department. Some might be recorded and some are not. Plus, shouldn't this be the burden of the state to establish if this is an important bit of data to establish it? Oh, hey, we know who called. We can trace it. I mean, after all, this was a motion to suppress where the state was given some notice of this. Isn't that correct? So you garner your resources and gather the evidence and talk to the police, and if you've got, in fact, basis to say, you know, Judge, this caller to Smith, we know who it was or we could have determined who it was just like in Schaefer and in Ewing. But that's not in this record, is it? That would have been helpful. Like dispositive, maybe? At this level, I think, I would ask this court to defer to the trial court's findings. I've never seen a case like this, Counsel. You know, and one of the things about SAP is you're called upon to defend as best you can. I understand that this wasn't your advice or your argument, but stopping a guy who's been reported speeding, I just don't understand what Judge Lewis was thinking here, how this can be deemed to be sufficient on this sort of record. It seems to me to be wide of the cases that you've cited, Schaefer and Ewing being the primary ones. This is not traceable. No crime was committed. No behavior was engaged in. He was just driving this unusual vehicle, and that's pretty much it. I think the two cases that support my position the best are Alabama v. White and the Rollins case. In both of those cases, Alabama v. White, you have an anonymous tip, and the police observations show that the informant had accurately predicted the woman's movement. The police officers did not view any criminal activity, and that was sufficient to stop the woman in that case. And in Rollins, the tip was that there was a person selling drugs in the trunk. That was indicative of ongoing public criminal activity versus concealed criminal activity, and this court found that was sufficient, even though the eyewitness did not actually observe the selling of drugs in the trunk. That was sufficient in that case. I think those two cases, particularly Alabama v. White, where there was an anonymous tip, are pretty supportive of my position. Are there any other questions? I see none. Thank you. Thank you. Ms. Redwood, anything further? Thank you, Your Honor. In reply to the State, the yellow crotch racket was a stock collar. That was in evidence. The identification of the yellow crotch racket is the particular one. The deputy did testify at the suppression that there are numerous roads and state highways and city streets in between west of Paris and where my client was stopped in the city of Paris. A male driver describes half the people of the state of Illinois, roughly. Heading toward Paris is not predictive of any crime. It's not even predictive of going to a particular place. It's just heading toward some place, which was something that was easily observed at the time. So the tipster didn't say, in Paris this yellow crotch racket motorcycle is going to go to a shooter's car where he's going to go in the back and he's going to do whatever. The State doesn't have any cases that say that speeding is the same as reckless driving or erratic driving. Reckless driving is a criminal offense while speeding is a petty offense. Deputy Todd did not write a ticket for speeding and he didn't stop Mr. Cottle for speeding. I dispute the fact that the call was an emergency. There's no indication that there was any emergency happening at the time. We weren't in a school zone. We weren't in a construction zone. There was no accident that happened. It's just a call that came in at a certain time and reported something that the caller saw at that time that doesn't raise it to an emergency. And there's no indication that it was to the 911 emergency line. This court does not have to defer to the trial court's conclusions in the case. This court has de novo review on this issue. Alabama v. White was called a close case even by the Supreme Court. And as I said before, the fact that the call was anonymous was outweighed by the specific predictive behavior that the woman engaged in,  what she was going to carry, when she would leave the house, and what her name was even. A 911 call from a housing project in Danville and Rollins. The people... See, there was a dissent in that case. And the court felt that the people who reported this, who had the 911 call, saw the drug dealing. I'm not sure if that was actually reported, that they saw them, but I believe that the dissent brought up, these people didn't see it. They said there was drug dealing, but without specifically saying what it was that they saw. Money exchanging, hands, drugs exchanging. It's never good policy to cite the sentence counsel. We might have been, some of us might have been, in the majority, that rejected that very argument. We'll hope the court does not hold that against me. But in any case, that would always be my personal opinion, and is not in my brief. For all of those reasons, I believe that the case needs to be reversed, and the trial court's decision.